IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MAE GILBRIDE, on behalf of
GEORGE J. GILBRIDE,

    Plaintiff,

vs.                                          CASE NO. 1:06cv247-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, George J. Gilbride, by Mae Gilbride, was found to be entitled to supplemental security income benefits by a decision rendered on September 30, 1998. Disabled was found to have commenced on January 17, 1997. On August 1, 2002, during a routine review, the Commissioner determined that Plaintiff's disability no longer

met Listing 112.11 and that he was no longer disabled.  After an administrative hearing on August 16, 2004, the Administrative Law Judge agreed.  That decision is before this court for review.

Plaintiff was born in 1993, and was 10 years old at the time of the administrative hearing.  Plaintiff presents only procedural claims.  He contends that the Administrative Law Judge erred by finding that his grandmother waived his statutory right to counsel at the hearing and by failing to obtain a current psychiatric evaluation from the University of Florida Shands Teaching Hospital.  He seeks a remand and an award of benefits.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A child's claim for supplemental security income benefits is analyzed by following the rules set forth in 20 C.F.R. § 416.924, et seq.  The Commissioner "will consider the combined effects of all [the child's] impairments upon [the child's] overall health and functioning," and is to evaluate "any limitations in [the child's] functioning that result from . . . symptoms, including pain."  20 C.F.R. § 416.924(a).  The claim is to be evaluated in three steps:

1. Is the child currently engaged in substantial gainful activity?

2. Does the child have any severe impairments?

3. Does the child have any severe impairments that meet, are medically equal to, or functionally equal in severity to, an impairment listed in Appendix 1 of 20 C.F.R. Part 404?

20 C.F.R. §§ 416.924(a)-(d).

The claim is denied at step two if the child does not have a severe impairment.  A "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" is not a "severe impairment."  20 C.F.R. § 416.924(c).

At step three, the first issue is whether the impairment meets or equals a listed impairment is the same as for evaluation of an adult claim.  If the impairment neither meets nor equals a listed impairment, the Commissioner must next determine whether the impairment is functionally equal in severity to a listed impairment.  This step is unique to child supplemental security income disability claims.  There is no "residual functional capacity" determination, and no determination of ability to perform work.

As to functional equivalency, the regulations provide:

If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings.  By "functionally equal the

listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section.

20 C.F.R. § 416.926a(a).  The domains are:

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and,

6. Health and physical well-being.

20 C.F.R. § 926a(b)(1)(i) – (vi).

"[A] 'marked' limitation in a domain [will be found] when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  It "means a limitation that is 'more than moderate' but 'less than extreme.' " *Id.*

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

"[A]n 'extreme' limitation in a domain [will be found] when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

> If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is

three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(iii).

The Commissioner's regulations provide that test scores are not to be relied upon without considering other evidence, and "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."  20 C.F.R. § 416.926a(e)(4)(i).  Test scores are considered "together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others."  20 C.F.R. § 416.926a(e)(4)(ii).

To decide whether the claimant has a "marked" or an "extreme" limitation, the Commissioner:

> will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects.  We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in §§416.924a, 416.924b, and 416.929.

20 C.F.R. § 926a(e)(1)(i).

> The medical evidence may include formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents.  Standard scores (e.g., percentiles) can be converted to standard deviations.  When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a "marked" or "extreme" limitation in a domain.

20 C.F.R. § 926a(e)(1)(ii).

Additionally, this is a termination of benefits case. The Commissioner conducts a continuing disability review pursuant to 20 C.F.R. §§ 404.1590 and 404.1594. The question on this review is whether there has been "any medical improvement," and whether "this medical improvement is related to [the claimant's] ability to work." § 404.1594(a). If both conditions are found, the Commissioner "must also show that [a claimant is] currently able to engage in substantial gainful activity" before a decision may be rendered that a claimant is no longer disabled. *Id.* A "medical improvement" is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." § 404.1594(b)(1).

The following principles of law apply to judicial review of the decision to end social security disability benefits:

> It is clear that the Secretary may terminate disability benefits whenever he obtains evidence that a claimant's disability has ceased. 42 U.S.C. s 425; 20 C.F.R. ss 404.1590(a) and 404.1594(a). However, it is also certain, as the Fifth Circuit declared in *Rivas v. Weinberger*, 475 F.2d 255 (5th Cir. 1973), that "(o)nce evidence has been presented which supports a finding that a given condition exists it is presumed in absence of proof to the contrary that the condition has remained unchanged." 475 F.2d at 258.

<u>Vaughn v. Heckler</u>, 691 F.2d 966, 969 (11th Cir. 1984).

> We must ascertain whether the Secretary's finding of improvement to the point of no disability is supported by substantial evidence. In each case, the burden remains with the claimant to prove the existence of a disability. *Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir. 1981). If, however, the evidence in a continuation case is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued. Otherwise, termination of benefits will often depend not on a finding of changed condition, but simply on the whim of a changed ALJ.

*Id.*

**Legal Analysis**

Plaintiff contends that Mae Gilbride, his grandmother and representative, did not knowingly waive his statutory right to have counsel to represent him at the hearing. Plaintiff further contends that the Administrative Law Judge failed to obtain a supplemental psychiatric report from Shands Teaching Hospital. He notes that his current attorney, N. Albert Bacharach, Jr., who represented him in 1998 and obtained benefits for him, would have represented Plaintiff *pro bono* and he contends he should have been told that by the ALJ. He contends that had Mr. Bacharach been in attendance at the hearing, he would have insisted that another psychiatric report be obtained from Shands Teaching Hospital, like the report that was in the record as the result of his representation in 1998 when benefits were awarded. Plaintiff urges that the case be remanded due to these alleged errors.

**Whether Plaintiff knowingly waived his statutory right to counsel**

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995), citing Smith v. Schweiker, 677 F.2d 826 (11th Cir. 1982) and 42 U.S.C. § 406. In Brown, the court found the claimant to have been confused by the Administrative Law Judge's questions concerning representation. 44 F.3d at 935. The ALJ there told Brown that she had signed a waiver of counsel, and she responded that she had asked her supervisor, who was not a lawyer, to represent her, and he had said "just go on without me." 44 F.3d at 932-933. The ALJ again said that "the main thing I want you to understand here today, is though do you know you had the right to representation." *Id.* at 933. She did not clearly answer that question. *Id.* The ALJ

continued to ask if she knew that she had a "right to have a representative," but did not explain what that meant.  *Id*.  Brown said she would "go on without a representative."  *Id*.  The court found this exchange to be an insufficient waiver of the statutory right to counsel, reasoning:

> Although she eventually responded in the affirmative when asked whether she desired to proceed alone, her earlier statements reflect that she wanted the assistance of her former supervisor, who told her to go on without him.  *Nothing in her testimony evinces an understanding that she had other options which were either explored or rejected*.

44 F.3d at 935 (emphasis added).  The court acknowledge that a written "notice had been sent to Brown prior to the hearing informing her that a private attorney might be willing to take her case on an [sic] contingent fee basis," and listed addresses for legal services attorneys.  44 F.3d at 935 n.6.  The court found this to be insufficient:  "Brown was not asked whether she sought help from any of these or other related services, nor was any effort made to determine whether she understood that she might obtain legal representation in those ways."  *Id*.

On November 19, 2003, a few months before the administrative hearing in the case at bar, the Administrative Law Judge sent a form letter to Ms. Gilbride informing her of her grandson's right to counsel.  R. 91.  She was advised that lawyers do not charge a fee prior to handling a case, but receive a contingent fee out of the award of back benefits upon winning the case.  *Id*.  The letter advised also that the maximum fee, unless specified otherwise in a fee contract, was $5,300 or 25% of the award, whichever is less.  *Id*.  Ms. Gilbride was told that the hearing would be continued to give her time to find a "representative."  *Id*.  When the hearing was set for February 13, 2004, R. 119, Ms. Gilbride returned an acknowledgment that she would be present for

the February hearing. R. 120. Ms. Gilbride did not sign and return the waiver of legal representation form that had been sent to her in November. R. 90.

At the beginning of the administrative hearing in this case, held on February 13, 2004, the following colloquy took place between Plaintiff's grandmother and the Administrative Law Judge:

> ALJ: All right, Ms. Gilbride, I understand you may want to have a lawyer or other representative represent you in this hearing, is that correct?
>
> WIT: Yes, if possible, yes.
>
> ALJ: All right. Apparently, Mr. Bacharach was working on this case previously, is that correct?
>
> WIT: Yes, with my daughter-in-law.
>
> ALJ: All right.
>
> WIT: His mom.
>
> ALJ: All right, would you like more time then to consult with Mr. Bacharach or another attorney or other –
>
> WIT: What happened, sir, is we live on a fixed income, and we had gone down to legal aid –
>
> ALJ: Right.
>
> WIT: And they said – they took papers, and they said, well, fine, but then they put George's SSI onto ours, and they said we weren't allowed at the legal aid.
>
> ALJ: All right.
>
> WIT: So then when we were looking for a lawyer – we can't afford one, and that is the reason why I'm here by myself.
>
> ALJ: All right. But would you like more time to consult with, with – to find a lawyer?

> WIT:  Mr. Bacharach?  I guess, I'll try, sure, sur.  I, I really don't know what to do at this time –
>
> ALJ:  Yeah.
>
> WIT:  – to tell you the truth.
>
> ALJ:  All right.  Well, I'll be happy to give you more time to consult with Mr. Bacharach or other attorneys and representatives if you like.
>
> WIT:  I think I can do it now, sir.
>
> ALJ:  Oh, you'd rather go ahead today?
>
> WIT:   I think so, yes.
>
> ALJ:  All right.  All right.

R. 393-394.

Plaintiff's current attorney, Mr. Bacharach, previously represented Plaintiff.  But as Ms. Gilbride testified, his fee contract was with Plaintiff's mother, Stacey M. Gilbride, not with Mae Gilbride, his grandmother.  Doc. 14-2.  While Mr. Bacharach's fee contract ambiguously still contains the usual paragraphs about payment of a fee, a large section is crossed out and handwritten is the notation:  "No fee child's case."  *Id.*, p. 1.  Mr. Bacharach represents that he takes children's cases *pro bono* and asks that the court judicially note this fact.  Doc. 14, p. 13.  Judicial notice cannot be taken because the fact is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b)(2).  But Mr. Bacharach's representation will be accepted as true, that had Mae Gilbride contacted Mr. Bacharach, he would have handled this case without any fee at all.

It appears from the colloquy during the administrative hearing that Mae Gilbride did not know of the fee arrangements with Mr. Bacharach.  At the outset she said she

wanted a lawyer. She had contacted legal aid, but she did not qualify for a free lawyer. Ironically that was due in part to the SSI income she had been receiving for "George," her grandson, which had been terminated. The ALJ showed good intent in trying to understand Ms. Gilbride's wishes, but he never explained to her that she might be able to find a lawyer on a contingent fee or, as Mr. Bacharach represents, no fee at all. Had she known that, she probably would have asked for a delay to speak with Mr. Bacharach and Mr. Bacharach would have appeared for her. The circumstances are too similar to the circumstances of Brown v. Shalala to find a knowing waiver of a statutory right to counsel. Hence, the court should next examine the issue of prejudice.

**Whether Plaintiff has shown prejudice**

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." Sims v. Apfel, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a *basic* obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (emphasis added), *citing*, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). This basic duty exists whether or not the claimant is represented. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).

The basic duty to develop a fair record becomes a special duty when a claimant has not waived a right to counsel. Where the right to representation has not been waived,

> the hearing examiner's obligation to develop a full and fair record rises to a
> special duty. This special duty requires, essentially, a record which shows
> that the claimant was not prejudiced by lack of counsel. In carrying out
> this duty, the ALJ must "scrupulously and conscientiously probe into,
> inquire of, and explore for all the relevant facts."

Brown v. Shalala, 44 F.3d at 934-935, quoting Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982) (citations omitted).

It is not necessary "to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." Id. "Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." Id. The court should be guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id. See also, Graham v. Apfel, 129 F.3d 1420, 1422-1423 (11th Cir. 1997).

An example of the sort of evidentiary gap necessitating remand is found in Brown v. Shalala. There, the claimant testified that just prior to the hearing she had been examined twice by her treating physician. The most recent medical evidence considered by the Administrative Law Judge, however, was dated six months earlier. The ALJ did not obtain the more recent treatment records. Further, he was informed that Plaintiff had been undergoing rehabilitation therapy, but did not obtain those records either. Id. and n. 8. Finally, the court noted that the ALJ did not question the claimant's husband, who apparently attended the hearing, as to her subjective complaints. 44 F.3d at 936 and n. 10. The court concluded that these were "evidentiary gaps" in the record showing sufficient prejudice to warrant a remand. It held that until

Case No. 1:06cv247MP/WCS

the records were gathered by the ALJ, it would have no way of knowing whether the records would be supportive of the claims, but found that a showing of such tangible prejudice was unnecessary.  44 F.3d at 936.

On the other hand, in <u>Graham v. Apfel</u> the court found that the record as a whole was neither incomplete nor inadequate.  129 F.3d at 1423.  Plaintiff, therefore, had "failed to demonstrate evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand . . . ."  *Id.*  Likewise, in <u>Edwards v. Sullivan</u>, 937 F.2d 580, 585-586 (11th Cir. 1991), the court found no prejudice:

> We discern no evidentiary gaps in the record before us.  Every doctor who examined Edwards submitted a report, and the ALJ procured reports from three consulting doctors in order to aid his understanding of those reports which, as we have indicated, were not entirely clear as to Edwards' limitations.  Though Edwards disagrees with the ALJ's conclusions, the fact remains that those conclusions were supported by substantial evidence, and Edwards *does not indicate what facts could have been submitted by an attorney that would have changed the outcome.  Cf. McConnell v. Schweiker*, 655 F.2d 604, 606 (5th Cir. Unit B Sept. 1981).

937 F.2d at 586 (emphasis added).

Plaintiff argues that had he had an attorney, the attorney would have obtained an updated Psychiatric Review Technique Form.  Such a report dated June 19, 1998, was in the record when Plaintiff was awarded benefits.  R. 238-253.  The report was from Jannette Rey, M.S., and was signed by Sheila Eyberg, at the University of Florida Shands Teaching Hospital.  R. 238, 253.  Plaintiff has not submitted any such updated report from Ms. Rey, however.

The record is otherwise complete and there are no evidentiary gaps.  Plaintiff was examined on December 21, 2001, by Louis Legum, Ph.D.  R. 299-300.  Dr. Legum reviewed Plaintiff's prior records and then administered the Wechsler Intelligence Scale

for Children, the Bender Gestalt Test, and the Woodcock-Johnson Tests of Achievement.  *Id.*  Test results revealed that Plaintiff had average intelligence (Full Scale IQ of 95).  R. 299.  The Bender Gestalt test showed performance consistent with Plaintiff's age and intellectual functioning.  *Id.*  Plaintiff's achievement test scores were consistent with his age, grade, and intellectual functioning.  R. 300.  Dr. Legum diagnosed Plaintiff with attention deficit hyperactivity disorder, combined type, with disorder of written expression, provisional.  *Id.*

On January 14, 2002, Claire C. Huisentruit, Clinical Psychologist, examined the record and completed an assessment of functioning.  R. 302-307.  She did not examine or test Plaintiff.  Dr. Huisentruit found that Plaintiff had no marked or extreme limitation in any domain, no speech disorder, and less than marked limitation in expressive language.

On January 23, 2002, Rhonda Gaudino, M.S., evaluated Plaintiff's speech and language impairments by examining the record.  R. 301.  She agreed with Dr. Huisentruit's assessment, finding that Plaintiff's language skills posed a less than marked degree of limitation in the domain of acquiring and using information and that Plaintiff's speech skills were within normal limits.  *Id.*

Another records review was performed on March 21, 2002, by June F. Cormier, Ph.D.  R. 308-309.  She did not think that Plaintiff's impairments met, were medically equal to, or functionally equal to any listed impairment.  R. 308.

Plaintiff's teacher, Ms. Benson, completed a progress report for Plaintiff on March 13, 2002.  R. 326.  She said that Plaintiff was occasionally disruptive in the morning, but his test scores were average, the quality of his work was adequate, he had a good

attention span in the morning, his effort was good, his homework was thoroughly completed, and his progress was satisfactory.  *Id.*

On June 13, 2002, it was noted by Plaintiff's pediatrician at Milla Pediatrics that Plaintiff did well in school.  R. 323.  He was above grade level in math and at grade level in reading.  *Id.*  On June 28, 2002, Elizabeth Benitez, M.D., Plaintiff's treating physician at Milla Pediatrics, wrote that Plaintiff was under her care for ADHD and that his ADHD was controlled by Adderall.[1]  R. 322.

On February 12, 2004, Dr. Benitez reported that Plaintiff was under her care for ADHD and was taking Strattera[2] to control his symptoms.  R. 380.  She thought that he would not be doing well without the medication and with monitoring.  *Id.*  She had to increase the dosage on January 5, 2004, to "keep him functioning at a level that would allow for learning."  *Id.*

On May 12, 2004, William E. Benet, Ph.D., Psy.D., examined and tested Plaintiff on a consultative basis.  R. 382-389.  Plaintiff was friendly, cooperative, responsive, alert, and oriented.  R. 382, 384.  Dr. Benet administered the same tests given by Dr. Legum in 2001 and reviewed medical and school records.  R. 382.  It was noted that Plaintiff had no school retentions or suspensions and was doing well in math.  R. 383.  He was attentive during the examination, but somewhat fidgety.  R. 384.  His speech was clear, coherent and relevant, and his articulation was good.  *Id.*  His IQ

---

[1] Adderall, a form of amphetamine, is used with children with attention deficit disorder with hyperactivity.  PHYSICIANS' DESK REFERENCE (2005).

[2] Strattera is a selective norepinephrine reuptake inhibitor and is used for treatment of ADHD.  PHYSICIANS' DESK REFERENCE (2005).

scores fell into the high average range of intellectual ability.  *Id*.  On the Woodcock-Johnson Tests of Achievement Plaintiff did not demonstrate any specific learning disabilities relative to his general intellectual ability and expected level of achievement.  *Id*.  There was no perceptual-motor processing problem noted on the Bender Visual-Motor Gestalt Test.  *Id*.  It was concluded that he had "the general intellectual ability and basic academic skills to make satisfactory academic progress in school with continued instructional support and medical management for his behavior."  *Id*.  A Childhood Functional Assessment was completed by Dr. Benet.  R. 389.  Dr. Benet thought that Plaintiff had "marked" limitation attending and completing tasks, less than marked limitation interacting and relating with others, and no limitations as to other domains of functioning.  *Id*.

**Conclusion**

While Plaintiff has shown that he did not waive her statutory right to counsel, he has not demonstrated any evidentiary gaps causing unfairness or clear prejudice.  Thus, Plaintiff has not shown that a remand is needed to obtain a report from Ms. Rey.  Plaintiff has presented no substantive challenge to the decision of the Commission.  Accordingly, the decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 5, 2007.

> s/    William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**